# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY CAIN, | |
| Plaintiff, | |
| v. | Case No. 3:19-CV-643-NJR-GCS |
| CONTINENTAL TIRE, | |
| Defendant. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motion for Leave to Proceed *in forma pauperis* filed by Plaintiff Gregory Cain (Doc. 3). Cain initially filed this employment discrimination lawsuit pursuant to Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5, and/or 42 U.S.C. § 1981 on June 13, 2019 (Doc. 2). After preliminary review of his complaint under 28 U.S.C. § 1915(a)(1), the Court found Cain's factual allegations in the Complaint were too bare bones to state a claim. Therefore, the Court dismissed the complaint without prejudice and granted Cain leave to file an amended complaint (Doc. 4). The Court further reserved ruling on Cain's Motion for Leave to Proceed *in forma pauperis* (*Id.*).

On September 12, 2019, Cain filed an Amended Complaint alleging Defendant Continental Tire discriminated against him on the basis of his race, disability, and national origin (Doc. 5). He also claimed Continental Tire created a hostile work environment and is responsible for medical negligence (*Id.*). Unfortunately, however, Cain failed to attach his EEOC charge, his charge before the Illinois Department of

Human Rights, or the Notice of Right to Sue from the EEOC, as previously directed by the Court. Accordingly, the Court granted Cain leave to file a Second Amended Complaint containing all relevant documents (Doc. 10).

Cain has since filed a Second Amended Complaint containing the relevant documents (Doc. 13). In his Second Amended Complaint, Cain alleges he was injured while working at Continental Tire on June 1, 2018, and was taken to the nurses' station (*Id.* at p. 8). Cain stated that he had pain in his right hand and that he thought it could be a blood clot (*Id.*). Cain was told to fill out paperwork and provide a urine sample for a drug test (*Id.*). Tom Stoudt, whose position at Continental Tire is unknown, told Cain he would have to drive himself to the hospital (*Id.*).

Cain continued working and was not put on light duty until June 30, 2018, when his right arm swelled up (*Id.*). Cain subsequently saw the company doctor on July 12, 2018 (*Id.*). The doctor told him it was carpal tunnel and released Cain back to full duty (*Id.*). The following day, Cain again reported to health services and again was told by Tom Stoudt that he had to drive himself to the hospital (*Id.*). He also was required to take another drug test (*Id.*). Cain asked if the EMT "Tom" could take him to the hospital, but "Tom" advised against it (*Id.*). Tom the EMT also stated that the company would not pay workers' compensation for his injuries of a supposed blood clot on his right hand (*Id.*). Cain then drove himself to the hospital (*Id.*).

On July 30, 2018, Cain received a cortisone shot and returned to work on light duty (*Id.*). His carpal tunnel became inflamed again, however, and he had to drive himself to the hospital when Tom failed to give him an ice pack for his hand (*Id.*). On September 4,

2018, Cain went to the Orthopedic Center of Southern Illinois, where he was diagnosed with mild carpal tunnel in his right hand and not a blood clot (*Id.*). He also was diagnosed with possible mild C6-7 radiculopathy (*Id.* at p. 9). In late September 2018, Cain was released from care and returned to full-duty work on the line as an Extruder Operator (*Id.*).

On October 15, 2018, Cain visited Dr. Paletta and Dr. Brown at the Orthopedic Center of St. Louis for a second opinion (*Id.*). He complained about both the left and right sides of his arms, hands, and wrists and explained that his job at Continental Tire requires him to lift up large forms on and above his shoulders (*Id.*). Cain was diagnosed with mild carpal tunnel on both his left and right side and conservative treatment was recommended (*Id.*). Dr. Brown further stated that Cain's work was the cause of his mild carpal tunnel, while Dr. Paletta stated that the pain in his shoulders was a result of his work (*Id.*). Continental Tire and its workers' compensation insurer, however, did not think further treatment was necessary for Cain and questioned whether the injuries were work related (*Id.*).

Cain then filed an EEOC complaint claiming that Continental refused to give him medical assistance and instead required him to take a drug test because of his race. Cain asserted that similarly situated non-Black employees were provided medical assistance when injured on duty and were not required to take a drug test (*Id.*). Cain claims Defendant was not happy about the EEOC complaint, so it retaliated by putting a halt to his treatment (*Id.*). Cain also was forced to take short-term disability, as Continental stated there was no work for Cain to do with his specific injuries (*Id.* at p. 10).

On March 18, 2019, the EEOC determined that it was unable to conclude any violation of its statutes occurred based on the information provided by Cain (*Id.* at p. 15). The EEOC notified Cain that it had 90 days to file a lawsuit in state or federal court based on his allegations (*Id.*).

On June 13, 2019, Cain timely initiated this lawsuit. In his Second Amended Complaint, Cain brings claims of hostile work environment and race and national origin discrimination under Title VII of the Civil Rights Act of 1967, as well as discrimination under the Americans with Disabilities Act (Doc. 13). Cain claims that Continental Tire discriminated against him, caused him emotional distress and pain and suffering, stopped workers' compensation, committed medical negligence and retaliated against him by putting a hold on further treatment to heal him, all because of his "darker race" (*Id.*). In his initial complaint, Cain also asserted that Continental Tire staff harassed him by putting inappropriate things like a maxi-pad on his locker and by sending him negative text messages (Doc. 2). He further claimed his supervisors made racist statements (*Id.*). Those allegations, however, have been omitted from the Second Amended Complaint.[1] Cain now seeks to proceed without prepayment of the required filing fees.

Under 28 U.S.C. § 1915(a)(1), a federal court is authorized to permit an indigent party to commence a civil action without prepaying the required fees if the party submits an affidavit that includes a statement of all assets he or she possesses and that

---

[1] The Court notes that there appears to be pages missing between pages 9 and 10 of the Second Amended Complaint. The Court advised Cain of the missing pages in granting him leave to file a Second Amended Complaint, but Cain did not include the missing pages in his amended filing.

demonstrates the party is unable to pay such fees. 28 U.S.C. § 1915(a)(1). Complete destitution is not required to proceed *in forma pauperis*; an affidavit demonstrating that the plaintiff cannot, because of his poverty, provide himself with the necessities of life is sufficient. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).

The Court has reviewed Cain's affidavit (Doc. 3) and finds that he is indigent. Cain attests that he brings home around $384 per week but that he owes $581 per month for rent, $325 per month for utilities, and a total of $1,481 per month in child support. He also claims no assets other than his mother's car, and he has only $387 in his checking account. Based on these facts, the Court finds Cain's poverty level justifies granting him IFP status.

But that does not end the inquiry. Under Section 1915(e)(2), the Court must then screen an indigent plaintiff's complaint and dismiss the complaint if it is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense."). Thus, resolution of the motion to proceed IFP requires the undersigned to review the allegations of the complaint.

In reviewing the complaint, the undersigned is aware that courts construe *pro se* claims generously. *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013). Conclusory statements and labels, however, are not enough. The complaint must allege enough facts to "state a claim to

relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 421 (7th Cir. 2013). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). "[I[nstead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

### A. Discrimination under Title VII and Section 1981

Title VII prohibits employers from discriminating against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). A Title VII discrimination claim requires a showing that an adverse employment action was motivated by discriminatory animus. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "The statute also forbids employers from retaliating against employees for complaining about prohibited discrimination" and "subjecting an employee to a hostile work environment." *Id.* at 917. Likewise, 42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making and enforcing contracts, including employment contracts. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975). Section 1981 provides a federal remedy against racial discrimination in private employment. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 789 (7th Cir. 2019)

Courts apply the same standards to analyze claims under Title VII and Section 1981. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). A plaintiff states a claim of discrimination under Title VII or § 1981 by asserting that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he

suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated, non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). "For purposes of Title VII, an adverse employment action is one that affects the compensation, terms, conditions, or privileges of employment, such as hiring, firing, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Gibbs v. Gen. Motors Corp.*, 104 F. App'x 580, 583 (7th Cir. 2004) (internal quotation and citation omitted). Furthermore, the action must be "materially adverse, not merely an inconvenience or a change in job responsibilities." *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Title VII does not provide a remedy for actions that do not affect an employee's terms of employment. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (stating that "not everything that makes an employee unhappy is actionable adverse action").

Here, Cain claims he was injured at work and, because he is Black, was denied medical treatment and required to take drug tests. Cain claims that similarly situated non-Black employees were provided medical assistance when injured on duty and were not required to take a drug test. He further alleges that Defendant refused to pay for his medical treatment as a result of his race or national origin. Liberally construing the complaint in favor of Cain, the Court finds that he has sufficiently alleged discrimination claims under Title VII and Section 1981. *See Plata v. Eureka Locker, Inc.*, No. 12-1497, 2013 WL 1364092, at *6 (C.D. Ill. Apr. 3, 2013).

### B. Discrimination Under the Americans with Disabilities Act

"The ADA prohibits an employer from discriminating against a qualified person on the basis of disability." *McCurry*, 942 F.3d at 789 (citing 42 U.S.C. § 12112(a)). To prove a violation of this provision, a plaintiff must show "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019), *reh'g denied* (Dec. 20, 2019). "The [ADA] requires employers to make 'reasonable accommodations that will allow a qualified individual with a disability to perform the essential functions of his or her job.'" *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 928 (7th Cir. 2019) (quoting *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 820 (7th Cir. 2017)).

Here, Cain alleges that he has carpal tunnel syndrome and that he was forced to take short-term disability, as Continental stated there was no work for Cain to do with his specific injuries. While Cain's allegations are not the model of clarity, the Court finds that his claim is not clearly frivolous. Accordingly, Cain will be permitted to proceed on this claim.

### C. Retaliation

To state a claim for retaliation under Title VII, a plaintiff must allege that (1) he engaged in statutorily-protected expression; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected expression and the adverse action. *O'Donnell v. Caine Weiner Co., LLC*, 935 F.3d 549, 553 (7th Cir. 2019).

The Seventh Circuit has stated that "[f]iling a charge with the EEOC about the

alleged discrimination is the most obvious form of statutorily protected activity." *Henson v. Canon Bus. Sols., Inc.*, 69 F. Supp. 3d 730, 737 (N.D. Ill. 2014) (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011)). An adverse employment action can include a reduction in compensation, fringe benefits, or other financial terms of employment. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014).

Here, Cain claims that on September 26, 2018, he filed a complaint against Continental and its medical claims insurance company, Sedgwick, and on October 25, 2018, he had an interview with the EEOC. Cain claims Continental and Sedgwick were not happy with his EEOC complaint, so they retaliated by putting a halt to his medical treatment. Refusing to pay for further medical treatment could be considered a reduction in Cain's employment benefits. At this point, the Court finds that Cain has alleged sufficient facts to state a claim for Title VII retaliation.

### D. Hostile Work Environment under Title VII

Cain also has raised a Title VII hostile work environment claim. To state a hostile work environment claim, a plaintiff must allege (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Cooper–Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an abusive relationship. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014).

In this case, Cain's original complaint contained allegations that could potentially rise to the level of a hostile work environment claim. He asserted that he was subject to harassment including "negative" text messages, maxi-pads on his locker, and racist statements by supervisors such as "blacks with big noses run fast, blacks with small noses make a lot of babies." These allegations are missing entirely, however, from the Second Amended Complaint. Thus, the Court finds Cain has not stated a hostile work environment claim, and this claim will be dismissed without prejudice.

### E. Medical Negligence

Cain also asserts a claim for medical negligence against Continental Tire. Of course, Continental Tire cannot be liable for medical negligence, as it does not practice medicine. *See Donais v. United States*, 232 F.3d 595, 598 (7th Cir.2000) ("Under Illinois law, in a medical malpractice action, the burden is on the plaintiff to prove (1) the proper standard of care by which a physician's conduct may be measured, (2) a negligent failure to comply with the applicable standard, and (3) a resulting injury proximately caused by the physician's lack of skill or care.").

Even taking a liberal view of the complaint, Cain's claim fails to state a claim for ordinary negligence. Cain claims Defendant's agents refused to provide him with basic medical care such as an ice pack and required Cain to drive himself to the hospital. But he does not claim that he suffered any further injuries or damages as a result of Defendant's failure to provide him with these services. Accordingly, Cain's claim for negligence will be dismissed without prejudice.

CONCLUSION

For the reasons stated above, Plaintiff Gregory Cain has adequately stated a claim for race and national origin discrimination under Title VII of the Civil Rights Act of 1967 and 42 U.S.C. § 1981, discrimination under the Americans with Disabilities Act, as well as Title VII retaliation. Cain's claims for Title VII hostile work environment and medical negligence are **DISMISSED without prejudice**.

Because Cain has met the requirements of 28 U.S.C. § 1915(a)(1) and 28 U.S.C. § 1915(e)(2), the Court **GRANTS** Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 3).

The Court further **DIRECTS** the Clerk of Court to provide Cain with a USM-285 form. Cain is **ORDERED** to return the completed form to the Clerk of Court. Upon receipt of the completed USM-285 form, the Clerk is **DIRECTED** to prepare and issue a summons for Defendant Continental Tire and deliver a service packets consisting of the summons, USM-285 form, and a copy of the Complaint, to the United States Marshals Service. The Court **DIRECTS** the United States Marshal, upon receipt of these documents, to serve a copy of the summons and Amended Complaint upon Defendant in any manner consistent with Rule 4, as directed by the plaintiff. Costs of service shall be borne by the United States.

**IT IS SO ORDERED.**

DATED:   January 15, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**