IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY CAIN,** | |
| Plaintiff, | |
| v. | Case No. 19-cv-643-SPM |
| **CONTINENTAL TIRE THE AMERICAS, LLC,** | |
| Defendant. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment and supporting Memorandum of Law filed by Defendant, Continental Tire The Americas, LLC ("CTA") (Docs. 49, 50). For the reason's set forth below, the Court **GRANTS** the Motion for Summary Judgment.

This action arises from the employment of Plaintiff Gregory Cain ("Cain") at CTA (Doc. 1). In his second amended complaint, Cain brought claims of hostile work environment and race and national origin discrimination under Title VII of the Civil Rights Act of 1967 ("Title VII"), as well as discrimination under the Americans with Disabilities Act ("ADA") (Doc. 13). Cain claims that CTA discriminated against him, caused him great emotional distress and pain and suffering, stopped workers' compensation, committed medical negligence and retaliated against him by putting a hold on further treatment to heal him because of his "darker race" (*Id.*).

## FACTUAL BACKGROUND

Within its Motion for Summary Judgment, CTA set forth its factual allegations in numbered paragraphs (Doc. 49). In accordance with Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, CTA cited to particular portions of the record to support its contention that each and every fact alleged was material and undisputed (*Id.*).

Cain filed three separate responses to the motion for summary, on September 2, 2021, September 15, 2021, and September 23, 2021, respectively; however, none of the responses complied with Rule 56 (Docs. 54, 59). As such, and in accordance with Rule 56(e)(2), this Court may consider the facts set forth by CTA as undisputed for purposes of this motion. Nevertheless, the Court is still obligated to ensure that the evidence submitted by CTA properly substantiates its assertions of entitlement to summary judgment. Fed. R. Civ. P. 56(e)(3). Indeed, the [movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

The following is a summary of the facts alleged by CTA, limited to those facts which would be admissible at trial and which are adequately supported and material to the issues in this case.

CTA operates a tire manufacturing plant in Mt. Vernon, Illinois. On March 14, 2016, CTA hired Cain as a passenger extruder operator, a full-time hourly position. Cain's Offer of Employment letter set forth the terms and conditions of his employment, including group health insurance with Blue Cross/Blue Shield ("BCBS") provided by CTA. Cain received training on CTA policies and procedures at orientation. CTA has an Equal Employment Opportunity policy and a policy that includes mandatory drug and

alcohol testing procedures for when employees are injured at work or when initiating a workers' compensation claim. Cain understood that an employee had to submit to a drug test when involved in a work-related injury.

CTA's Mt. Vernon plant has an onsite first-aid station called "Health Services"[1] that provides triage and/or immediate medical aid to ill and injured CTA workers. Health Services was staffed by SSM medical personnel, not CTA employees, who were hired by SSM. Every CTA employee who was injured at CTA had to submit to a drug test. Although the drug test normally occurred at Health Services immediately following the incident, in a medical emergency, immediate medical care may prevent the drug screen until a later time. If a CTA employee is ill or injured, Health Services[2] can direct them to urgent care and/or the emergency room.

On June 1, 2018, CTA supervisor, Donny Smith, took Cain to Health Services with reported pain and swelling in his right hand. At Health Services, Cain was drug tested and signed the consent form in accordance with CTA policies and procedures for work related injuries. At Health Services, the SSM staff offered to take Cain to Urgent Care, but he decided to go home and ice his hand.

On June 30, 2018 Cain went to Health Services and reported swelling in his right arm. Cain had a drug screen at Health Services and signed the consent pursuant to CTA policy regarding on-the-job injuries. At that time, there was a Caucasian woman called "Summer" also in Health Services who was bleeding "all over the place" and needed stitches in her finger. Summer did not get a drug test at Health Services, but she got

---

[1] Some CTA employees referred to Health Services as the Nurses' Station.
[2] This decision is made by SSM medical personnel in the exercise of their professional judgment.

one about a week later when she returned to CTA. Cain did not have any issues with taking a drug test so long as everyone had to take one. Summer is the only person he knows of who was not required to take a drug test immediately after an incident.

There were two SSM employees at Health Services, Tom Stoudt ("Stoudt") and Dawn ("Dawn"), attending to both Summer and him. Stoudt was not an employee of CTA. SSM personnel called the rover to take Summer to the hospital, but Cain was given a note for Urgent Care and was told that Health Services did not have another rover. SSM has access to one CTA rover to transport injured employees offsite and SSM makes the determination who medically needs the rover. Cain only had 17 minutes to get to Urgent Care, but he made it on time. Stoudt had no oversight of workers' compensation claims at CTA and any statements he may have made were just his opinions. At Urgent Care, a blood clot was ruled out and the treater believed Cain had carpal tunnel. Cain was released to light duty and told to follow up with the nurse practitioner at CTA.

Cain complained about the treatment he received from Stoudt in Health Services and submitted a "Fair Treatment Form" to CTA. Cain's complaint centered on Stoudt and not any CTA employees. Stoudt never mentioned Cain's race, but Cain felt discriminated against because Stoudt treated Caucasian people like Summer and another man differently. On August 9, 2018, after he filed the Fair Treatment Form, Cain met with Mike Wagoner ("Wagoner"), the head of HR at CTA, and Paige Owens ("Owens"), an HR representative for CTA, to discuss his concerns. Cain knew Owens from his orientation and thought the meeting went very well.

On September 21, 2018, Cain returned to full duty work, but was injured when he resumed his regular duties. Cain visited Health Services and the SSM personnel authorized the rover take him to Urgent Care. Per Cain, everything was "handled perfectly".

CTA's workers' compensation program is administered by Sedgwick. Sedgwick adjudicates workers' compensation claims and conducts the investigations and medical reviews. On September 14, 2018, Cain filed a workers' compensation claim for his June 1, 2018 injury.

On September 21, 2018, Cain saw his physician, Dr. John Ahn, at the Orthopaedic Center of Southern Illinois for evaluation of his right hand. Sedgwick arranged for him to get a second opinion. On October 15, 2018, Cain saw Dr. Paletta at the Orthopedic Center of St. Louis for evaluation of his left shoulder and also saw Dr. David Brown for evaluation of his wrists.

Melody Cravens, CTA's workers' compensation administrator, received Dr. Paletta's report and questioned the accuracy of the passenger extruder operator description utilized, as well as the description of repetitive nature of the job duties. Cravens spoke with Cain's supervisor, James Johnson, regarding Cain's job duties and a work study report was performed of the passenger extruder operator position to evaluate the actual job duties.

On November 21, 2018, Andrew Keefe ("Keefe"), CTA's workers' compensation attorney, reached out to Ryan Baker ("Baker"), Cain's attorney, disputing causal connection of the injury to Cain's job duties and advising that Cain had group health insurance available. Baker advised Cain to consider using his group health insurance.

On January 23, 2019, Keefe sent Baker a job video, work study of passenger extruder operator position and a memorandum requesting to forward same to Dr. Paletta and Dr. Brown for review to address causation. On April 23, 2019, Keefe sent a follow-up to Baker regarding the extruder operator position, the job video, and job description.

On May 9, 2019, Baker advised Keefe that he had Cain's permission to submit the video and job description to Dr. Paletta and Dr. Brown for opinions regarding causation. On May 31, 2019, the information was forwarded with a request as to whether opinions and treatment recommendations/restrictions were causally related to Cain's work at CTA.

On June 6, 2019, Dr. Paletta opined that his diagnosis and treatment did not change, but his causation was altered to say that Cain was not doing any activities on-the-job that would cause or contribute to impingement syndrome. The report was forwarded from Keefe to Baker on June 20, 2019, along with correspondence that CTA would not agree to authorize ongoing shoulder treatment.

On July 8, 2019, Dr. Brown opined that if Cain had been on restricted duties since June of 2018, any increased and/or new symptoms in his left hand would not be causally related to his work duties at CTA. The report was forwarded from Keefe to Baker on August 21, 2019, along with correspondence that CTA denied the request for ongoing treatment of Cain's upper extremities.

Work-Fit Center is a physical therapy provider at the Mt. Vernon CTA plant and is an employee benefit paid by CTA. Cain received physical therapy at Work-Fit Center

from July 2018 through August 2019, even while on medical leave. During this time frame, Cain fired Baker as his workers' compensation attorney.

Cain could have received medical treatment between November 2018 and August 2019 under his BCBS health insurance through CTA. After his workers' compensation was denied, Cain received the shoulder and hand surgeries under his BCBS insurance.

On November 8, 2018, Cain filed a Charge of Discrimination with the EEOC. On March 14, 2019, Brandi Kraft, EEOC investigator, advised that she had been unable to establish a clear violation. On March 18, 2019, the EEOC issued a dismissal and notice of rights.

Cain has not filed any other EEOC charges. Cain was not discouraged by any CTA employee from filing an EEOC charge or from filing a workers' compensation claim nor did any CTA employee ever say anything negative about his charge. On December 2, 2018, Cain had his annual review at CTA. Cain received pay increases during his time at CTA and never had a change in position or benefits. The only Fair Treatment Form Cain submitted while at CTA was regarding Stoudt's treatment.

Cain is currently receiving long-term disability benefits through CTA. He was on light-duty work from July 2018 until August 2019. The passenger extruder operator job description calls for medium to heavy work, occasional exposure to heat and dust, constant exposure to noise and moving equipment, ability to stoop, bend, walk long distances, climb stairs and lift 50 or more pounds on occasional to frequent basis, and medium to heavy pushing and pulling. Cain is currently unable to do his job due to his disability. Cain was unable to perform the essential functions of his job from September

5, 2019 until September 18, 2020 and is currently unable to perform the essential functions with or without accommodations.

## PROCEDURAL HISTORY

On June 13, 2019, Cain filed his complaint against CTA (Doc. 1). On August 14, 2019, the complaint was dismissed for failure to state a claim; however, Cain was granted leave to file an amended complaint (Doc. 4).

On September 12, 2019, Cain filed his amended complaint (Doc. 5). Because the amended complaint appeared to be missing pages and was lacking the EEOC charge, the IDHR charge, and the right to sue letter, Cain was granted until October 28, 2019 to file a second amended complaint (Doc. 10).

On October 24, 2019, Cain filed his second amended complaint (Doc. 13). On January 15, 2020, Cain was granted leave to proceed *in forma pauperis* (Doc. 16). In that Order, the Court noted that it had conducted a preliminary review of the second amended complaint and determined that Cain had sufficiently alleged discrimination claims under Title VII and Section 1981, discrimination under the ADA, and retaliation under Title VII (*Id.*). The Court reiterated that Cain had not stated claims for a hostile work environment and negligence, so those allegations were dismissed without prejudice (*Id.*).

On July 20, 2020, CTA filed a motion for definite statement (Docs. 24, 28). On September 22, 2020, the Court denied the motion and divided Cain's claims into the following three counts: (I) Race and/or national origin discrimination under Title VII of the Civil Rights Act of 1967 and 42 U.S.C. §1981; (II) Discrimination under the Americans with Disabilities Act of 1990; and, (III) Retaliation under Title VII of the

Civil Rights Act of 1967 (Doc. 28). On October 6, 2020, CTA answered the amended complaint (Doc. 30).

On November 2, 2020, this case was assigned CJRA Track B with the final pretrial conference being set on October 14, 2021 and a presumptive jury month of November 2021 (Doc. 31). On December 15, 2020, a scheduling order was entered regarding the handling of discovery and providing a deadline of July 23, 2021 for the filing of dispositive motions (Doc. 34).

On July 23, 2021, CTA filed its motion for summary judgment and supporting memorandum of law (Docs. 49, 50). On that same date, CTA also filed a notice of filing pursuant to Rule 56 of the Federal Rules of Civil Procedure, regarding the motion for summary judgment that advised Cain, as a *pro se* litigant, of the procedures and potential pitfalls of Rule 56 (Doc. 51). The notice included a copy of Rule 56 in its entirety (Doc. 51-1). Cain's response was due on August 26, 2021; however, since no response was filed, on August 30, 2021, the Court issued an Order to show cause, granting Cain until September 13, 2021 to respond (Doc. 52).

On September 2, 2021, Cain filed two handwritten documents – one was designated as response to order to show cause and the other as response to motion for summary judgment (Docs. 53, 54). Cain claimed he could not respond to motion because he did not have it and claimed to be a whistle-blower who had faced racial discrimination, retaliation, and no medical care (*Id*.).

On September 15, 2021, Cain filed his second response to motion for summary judgment, this time a three-page document asking the Court to keep the case open;

however, he again failed to comport to any of the requirements set forth in Rule 56 (Doc. 59).

On September 16, 2021, CTA filed a reply, after having obtained leave to do so. (Doc. 61). Within its reply, CTA first rebutted Cain's contention that he had not received the motion, and then argued that Cain provided no evidence to establish a *prima facie* case for relief for any of his claims or to permit a reasonable factfinder to conclude that he suffered any adverse employment action or retaliation (*Id.*).

On September 23, 2021, Cain filed his third response to motion for summary judgment, this time a one-page document where he again "humbly asked the court not to dismiss the case" (Doc. 62). Not only was this the third response and filed out of time, it again failed to comport to any of the requirements set forth in Rule 56 (*Id.*).

## LEGAL STANDARD

**Summary Judgment – Rule 56 of the Federal Rules of Civil Procedure**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

Summary judgment is "the put up or shut up moment in a lawsuit" where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of the events. *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (*quoting Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986).

**Local Rules**

According to Local Rule 7.1(c)(1) of the U.S. District Court for the Southern District of Illinois, which includes motions for summary judgment, "[A]n adverse party in a civil case shall have 30 days after service of a motion listed above to file **a** response." (SDIL-LR 7.1(c)(1)) (emphasis added). Local Rule 7.1(c) goes on to state, in pertinent part that:

> "Failure to timely file a response to the motion may, in the Court's discretion, be considered an admission of the merits of the motion. Reply briefs, if any, shall be filed within 14 days of the service of a response. Reply briefs are not favored and should be filed only in exceptional circumstances. … under no circumstances will sur-reply briefs be accepted." (SDIL-LR 7.1(c)).

Cain's response to the Motion for Summary Judgment was due within 30 days of filing, or by August 26, 2021 (Doc. 49). Because no response had been received by August 30, 2021, this Court entered an Order to Show Cause, advising Cain to respond to show cause OR respond to motion for summary judgment by September 13, 2021 (Doc. 52). On September 2, 2021, Cain filed his first response to summary judgment (Doc. 54). Then without leave of Court and outside of the already extended time to respond, Cain filed two additional responses, on September 15, 2021 and on September 23, 2021 (Docs. 59, 62).

While it is true that *pro se* pleadings are liberally construed; leniency toward a *pro se* litigant is circumscribed. *See Greer v. Bd. Of Educ.,* 267 F.3d 723, 727 (7th Cir. 2001) (courts are not "obliged ... to scour the record looking for factual disputes" to rescue a *pro se* litigant from losing summary judgment). *Pro se* status does not serve as a license to ignore the Federal Rules of Civil Procedure or the Local Rules. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[procedural] rules apply to uncounseled litigants"); *Downs v. Weslphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) ("*pro se* litigants are not entitled to a general dispensation from the rules of procedure"). Furthermore, although severe, the Seventh Circuit has consistently upheld district judges' discretion to require strict compliance with local rules. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed.Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules); *Wilson v. Kautex, Inc.*, 371 Fed.Appx. 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though

Wilson is a *pro se* litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

## ANALYSIS

### I.   Race and/or National Origin Discrimination

Cain first claims that CTA discriminated against him on the basis of his race and/or national origin in violation of Title VII of the Civil Rights Act of 1967 and 42 U.S.C. §1981 (Doc. 28). Title VII prohibits employers from discriminating against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1).

The test for proving discrimination "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action". *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) *citing Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). Generally speaking, the plaintiff has the initial burden of establishing that: (1) he is a member of a protected class, (2) he performed reasonably on the job in accord with his employer['s] legitimate expectations, (3) despite his reasonable performance, he was subjected to an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably by the employer." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 834 F.3d at 765. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's

explanation is pretextual." *Id.*

There is no question that Cain, an African American, is a member of a protected class and that he received pay increases and never had a change in position or benefits prior to his injury (Doc. 49, ¶ 76). However, Cain has not shown that any adverse employment action was taken by CTA as the crux of his allegations focus on the conduct of Health Services and the SSM personnel. Although the definition of an adverse employment action is generous, it is still subject to certain limitations that Cain cannot meet. See *Herrnreiter v. Chicago Housing Auth.,* 315 F.3d 742, 744 (7th Cir.2002). At the very least, Cain must show some quantitative or qualitative change in the terms or conditions of his employment. *Id*.

Notwithstanding the forgoing, Cain has not shown that any similarly situated employee outside of his protected class was treated more favorably. When asked about similarly situated non-black employees, Cain mentioned a Caucasian female known as "Summer" (*Id.,* ¶ 29). First, Cain indicated that Summer did not have to take a drug test upon arriving at Health Services; however, Summer was bleeding and needed emergency services, and she had to take a drug test when she returned to CTA in accordance with the CTA policy. (*Id.,* ¶¶ 17, 26-28). Second, Summer was given a ride to the hospital, but Cain had to drive himself to Urgent Care; however, Summer needed emergency care and CTA only provides access to one rover to transport injured employees off-site (*Id.,* ¶¶ 20-21). While the rover can be used in non-life threatening instances, it is up the professional judgment of the SSM staff to determine who medically needs access to the rover (*Id.*).

Assuming arguendo that Cain can meet the burden, Count I would still fail. CTA

has articulated legitimate, nondiscriminatory reasons for what transpired. With respect to not being drug tested at Health Services, Summer clearly needed emergency care and the SSM personnel were more concerned with stopping the bleeding. Summer was also required to be drug tested upon her return to CTA, per policy. As for the use of the rover, there is only one and SSM personnel, not CTA, determined medical need.

In the employment discrimination context, summary judgment is warranted where "the evidence, interpreted favorably to the plaintiff, could not persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir. 1989). Because Cain is unable to prove a *prima facie* case of discrimination; summary judgment is clearly appropriate.

## II. Discrimination under the Americans with Disabilities Act

In Count II of his amended complaint, Cain alleges that CTA discriminated against him under Americans with Disabilities Act of 1990 (Doc. 28). "The ADA prohibits an employer from discriminating against a qualified person on the basis of disability." McCurry, 942 F.3d at 789 (citing 42 U.S.C. § 12112(a)). To prove a violation of this provision, a plaintiff must show "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019), *reh'g denied* (Dec. 20, 2019).

In this case, Cain can satisfy the first element; he is disabled and is currently receiving long-term disability benefits from CTA (Doc. 49, ¶79-80). He cannot; however, satisfy the second element as he is not a qualified individual with a disability. Cain is unable to do his job at CTA, with or without accommodation (*Id.*, ¶82, 84).

With respect to the ADA, summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Because Cain is not qualified to perform the essential functions of his job as passenger extruder operator, with or without accommodation, there is no reason to analyze the third element and summary judgment is appropriate on count II of the amended complaint.

Notwithstanding the forgoing, Cain's claim under the ADA is also precluded as he did not exhaust his administrative remedies. Under the ADA, "a plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) . "Claims are 'like or reasonably related' when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* ). "The charge and complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* (emphases in original).

In his Charge of Discrimination, Cain stated,

> "I began my employment with Respondent in or around 2015. My current position is Extruder Operator. Beginning around June 2018 and continuing throughout the remainder of my employment, I have been subject to different terms and conditions of employment, including, but not limited to, not being given medical assistance when injured on duty and being required to take a drug test. Similarly situated non-Black employees were provided

>     medical assistance when they were injured on duty and were not
>     required to take a drug test. I have complained to Respondent
>     about discrimination. I believe I have been discriminated against
>     because of my race, Black, in violation of Title VII of the Civil
>     Rights Act of 1964, as amended." (Doc. 49-27).

While the charge named CTA as respondent, so clearly implicated the same party, the same conduct is not implicated. The EEOC charge only mentions Title VII and instances where Cain claims racial discrimination. At no point does the EEOC charge refer to the ADA, Cain's carpal tunnel syndrome, and/or a disability, which were addressed in the second amended complaint.

### III.    Retaliation under Title VII of the Civil Rights Act of 1967

In Count III of his amended complaint, Cain asserts that he was retaliated against in violation of Title VII, which forbids employers from retaliating against employees for complaining about prohibited discrimination. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). In general, Title VII forbids employer retaliation where an employee "has opposed any practice made an unlawful employment practice" by Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a).

Although the Court noted that Cain's second amended complaint was "not a model of clarity", Chief Judge Rosenstengal advised CTA that the Title VII retaliation claim asserted by Cain involved the September 26, 2018 'complaint' against CTA and its medical claims insurance company, Sedgwick, and the October 25, 2018 interview with the EEOC (Doc. 28). Specifically, Cain claimed that CTA and Sedgwick were not happy with his EEOC complaint, so they retaliated by putting a halt to his medical treatment, which could be considered a reduction in Cain's employment benefits (*Id.*).

First and foremost, any claim of retaliation has not been exhausted. In Title VII cases, as with the ADA claim, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges. *See Dear v. Shinseki,* 578 F.3d 605, 609 (7th Cir.2009); *Ajayi v. Aramark Business Services, Inc.,* 336 F.3d 520, 527 (7th Cir. 2003); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992).

The scope of an administrative charge brought against a private-sector employer is determined by examining the claims that were "brought to [the EEOC's] attention," not by whether the EEOC actually considered or disposed of a given claim. *Rush,* 966 F.2d at 1112. As set forth *infra*, Cain's Charge of Discrimination, which was filed on November 8, 2018, references Title VII and instances where Cain claims racial discrimination, but does not mention retaliation even though filed after the September 26, 2018 'complaint' against CTA and its medical claims insurance company, Sedgwick, and after the October 25, 2018 interview with the EEOC.

Notwithstanding the foregoing, summary judgment is also appropriate on the merits on the retaliation claim. There are two different ways to make a *prima facie* showing of retaliation, the direct method and the indirect method. *Boss v. Castro,* 816 F.3d 910 (7th Cir. 2016). Under both methods, Cain fails.

A Title VII plaintiff proceeding under the direct method must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Harden v. Marion County Sheriff's Dept.*, 799 F.3d 857, 861-862 (7t Cir.

2015)(citing *Colman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). To prove retaliation under the indirect method, a plaintiff must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly-situated employees who did not engage in protected activity. *Harden,* 799 F.3d at 862 (citing *Argyropoulos v. City of Alton,* 539 F.3d 724, 733 (7th Cir.2008)).

The first two elements of proof are the same under either the direct or indirect method. While it is clear that Cain engaged in protected conduct in filing both the workers' compensation claim and EEOC complaint, and it could be argued that refusal to pay for further medical could be an adverse employment action, Cain still cannot prevail under either scenario as he cannot prove the remaining elements. Cain cannot show a causal connection between the filing of the claim/complaint with the termination of his benefits as it was based upon the medical opinions of Dr. Brown and Dr. Paletta. Furthermore, because he was unable to perform his job, with or without accommodations, he could not meet his job expectations. Finally, Cain has not shown that he was treated less favorably than similarly situated employees.

While not conceding all the elements have been established under one of the methods, even if they were, he would still fail. Under both methods, once a *prima facie* case is established, a presumption of retaliation is triggered, and the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for its action. *Id.* (citing *Coleman,* 667 F.3d at 845). CTA can articulate that the loss of benefits is attributable to the reports of Dr. Brown and Dr. Paletta, a non-pretextual

reason because they both opine that his injuries were not causally connected to his job duties.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant, Continental Tire The Americas, LLC. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.  As such, all pending court dates are cancelled and terminated.

**IT IS SO ORDERED.**

**DATED: <u>September 24, 2021</u>**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**

Page **20** of **20**